UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------X
RONDELL LAMONT WILLIAMS-HAYES,

Plaintiff,

-against-

LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI, and CHRIS PHILLIPS, individually,

Defendants.
------------------------------------------------------------------X

Civil Action No.: _______________

**COMPLAINT & JURY TRIAL DEMAND**

## NATURE OF THE CLAIMS

**1.** This is a civil action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI and CHRIS PHILLIPS' unlawful employment practices against Plaintiff RONDELL LAMONT WILLIAMS-HAYES, including their discriminatory treatment, harassment, hostile work environment, and unlawful retaliation against the Plaintiff due to race and skin color, culminating in the termination of his employment, in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. (the "PHRA").

## PRELIMINARY STATEMENT

**2.** This is an action for employment discrimination, hostile work environment, and retaliation, including retaliatory termination, brought by RONDELL LAMONT WILLIAMS-HAYES against LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI and CHRIS PHILLIPS, arising from Defendants' unlawful discriminatory and

retaliatory conduct based on Mr. Williams-Hayes' race and color as a black, African American man. Mr. Williams-Hayes was employed as a Lot Attendant from in or around February 2026 until Defendants terminated his employment on or about July 20, 2026, six weeks after he filed a charge of discrimination with the Equal Employment Opportunity Commission and three weeks after the EEOC issued his Notice of Right to Sue.

**3.** Defendants subjected RONDELL LAMONT WILLIAMS-HAYES to retaliation and race-based harassment and discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2, et seq. (hereinafter "Title VII"), and of the Reconstruction Era Civil Rights Acts, as amended, 42 U.S.C. §§ 1981, et seq. (hereinafter "RECRA").

**4.** Throughout his employment with Defendants, Plaintiff RONDELL LAMONT WILLIAMS-HAYES (hereinafter referred to as "Plaintiff" and/or "Mr. Williams-Hayes") was subjected to discrimination, harassment, retaliation, and a hostile work environment by Defendant LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI (hereinafter referred to as "LAW PLUS")' employees and/or agents, including Mr. CHRIS PHILLIPS, General Manager.

**5.** LAW PLUS' administrative system lacks integrity and fairness, and violates Federal and Pennsylvania employment laws, regulations, and policies.

**6.** LAW PLUS has also been disparate in their personnel actions regarding career development and benefits based on Plaintiff's race and skin color.

**7.** LAW PLUS' egregious and outrageous acts of discrimination and retaliation against Plaintiff during his employment have resulted in severe emotional distress, humiliation, anxiety, physical ailments, reputational harm, and economic damages, including the loss of his income.

**8.** Defendants' conduct is knowing, malicious, willful, and wanton and/or shows a reckless disregard for the Plaintiff. It has caused and continues to cause the Plaintiff to suffer substantial economic and non-economic damages, permanent harm to Plaintiff's professional and personal reputations, and severe mental anguish and emotional distress.

## **JURISDICTION AND VENUE**

**9.** This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under Title VII and 42 U.S.C. § 1981. Plaintiff's Pennsylvania state-law claims are brought pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367, as those claims arise from the same common nucleus of operative fact.

**10.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, specifically at Defendant LAW PLUS' place of business located at 300 Baltimore Pike, Springfield, Pennsylvania 19064, which is situated in Delaware County within the Eastern District of Pennsylvania.

**11.** Mr. Williams-Hayes filed a charge with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") with respect to the herein charges of harassment and discrimination on or about June 9, 2026 (hereinafter referred to as "EEOC Charge No. 530-2026-07199"). The charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

**12.** On or about June 29, 2026, Plaintiff received a Determination and Notice of Rights (hereinafter referred to as "Plaintiff's said Notice of Right to Sue letter") from the EEOC for EEOC Charge No. 530-2026-07199.

**13.** Plaintiff satisfied all administrative prerequisites and filed this case within ninety (90) days of receiving the Notice of Right to Sue letter. The ninetieth day after June 29, 2026 fell on Sunday, September 27, 2026; under Fed. R. Civ. P. 6(a)(1)(C), the period continued to run until the end of Monday, September 28, 2026, the day on which this Complaint was filed.

**14.** The retaliatory acts alleged herein that occurred after the filing of EEOC Charge No. 530-2026-07199, including the termination of Plaintiff's employment on or about July 20, 2026, grew out of and are reasonably related to the Charge and are properly before this Court without the filing of a further administrative charge.

**15.** Plaintiff has filed suit with this Court within all applicable statute of limitations periods.

**16.** All conditions and requirements precedent to the commencement of this action have been met.

## PARTIES

***The Plaintiff***

**17.** Plaintiff is an individual black, African American man, who is a resident of Philadelphia, Pennsylvania.

**18.** Plaintiff is therefore a member of multiple protected classes and is entitled to the protections provided by Title VII, Section 1981, and the PHRA.

***The Defendants and their Agents***

**19.** At all times material to this Complaint, Defendant LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI (hereinafter referred to as "LAW PLUS") is a limited liability company organized and authorized to do business in the Commonwealth of Pennsylvania, operating the Volkswagen of Springfield and Springfield Mitsubishi automobile dealerships located at 300 Baltimore Pike, Springfield, Delaware County, Pennsylvania 19064, and at all relevant times herein, was Plaintiff's employer.

**20.** Upon information and belief, LAW PLUS is owned by Matthew Law and operates its dealerships under the trade name "Law Automotive."

**21.** Upon information and belief, LAW PLUS employs more than fifty employees.

**22.** At all times material to this Complaint, LAW PLUS meets the definition of an "employer," and/or "joint employer," and/or "single employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the PHRA, 43 P.S. § 954(b).

**23.** At all times material to this Complaint, LAW PLUS acted, and continues to act, by and through their employees, agents, and servants who were acting in the scope and course of employment, agency, and servitude.

***The Individual Discriminator***

**24.** At all times material to this Complaint, Defendant CHRIS PHILLIPS (hereinafter referred to as "PHILLIPS") was, and still is, the General Manager of LAW PLUS' Volkswagen of Springfield dealership, a supervisor, and a decision-maker with regard to Plaintiff's employment at LAW PLUS.

**25.** PHILLIPS was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff. As Plaintiff's supervisor, PHILLIPS also aided and abetted the unlawful conduct described herein.

**26.** PHILLIPS actively sought, and continues to seek, to exploit his position of authority to discriminate against, retaliate against, humiliate, intimidate, and professionally sabotage Plaintiff, and other LAW PLUS employees who are members of protected classes.

**27.** At all times material to this Complaint, PHILLIPS was aware of Plaintiff's protected characteristics, including, *inter alia*, Plaintiff's race and skin color.

**28.** At all times material to this Complaint, PHILLIPS was aware of Plaintiff's protected conduct, including, *inter alia*, complaining about the discriminatory misconduct of Defendant LAW PLUS' employees, advising PHILLIPS that he had retained counsel, and filing a charge of discrimination with the EEOC.

**29.** At all times material to this Complaint, PHILLIPS was aware of and subject to LAW PLUS' Non-Discrimination, Non-Retaliation, and Anti-Harassment policies, including, specifically, the said policy's provisions on managerial and supervisory responsibility and protected complaint procedures.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Duties

**30.** Mr. Williams-Hayes began his employment with LAW PLUS, in or around February 2026, as a Lot Attendant at its Volkswagen of Springfield dealership.

**31.** At all times material to this Complaint, Plaintiff was qualified for this position.

**32.** Throughout his employment with Defendants, Mr. Williams-Hayes received compliments for his work performance and always got along well with his co-workers.

**33.** By way of example, on or about February 9, 2026, PHILLIPS responded to a photograph of a vehicle Mr. Williams-Hayes had detailed, "Looks beautiful…"; and in or around March 2026, PHILLIPS wrote to the Volkswagen of Springfield sales-team group text: "Thank you so much to Rondell for holding us down on his own also."

**34.** Despite his excellent work record, throughout Mr. Williams-Hayes' employment, he was subjected to a pattern and practice of discrimination, harassment, and hostile work environment based upon his skin color and race.

**35.** LAW PLUS engaged, and continues to engage, in a pattern and culture of discrimination against black and African American employees, and employees who engage in protected conduct.

**36.** In a pattern of discriminatory and retaliatory harassment based on Plaintiff's protected characteristics and protected conduct, LAW PLUS has made adverse employment decisions with respect to Plaintiff's job opportunities at LAW PLUS, including the termination of his employment.

**37.** Based on the facts set forth herein, it is evident that Plaintiff would not have been subjected to the discriminatory and harassing treatment, or adverse employment actions, but for his protected characteristics and his engagement in protected activity.

**38.** During his employment, in addition to his duties at LAW PLUS' Volkswagen dealership, Mr. Williams-Hayes was regularly assigned to perform work for the Springfield Mitsubishi dealership owned and maintained by LAW PLUS, located directly across the street from the Volkswagen dealership.

**39.** Across both dealerships, Plaintiff's assigned duties included performing full details and washes on vehicles, organizing new-vehicle inventory in the lots, ensuring that every new vehicle carried a stock number, transporting customers to and from the dealership, and delivering vehicles to customers.

**40.** Plaintiff performed these duties across both dealerships without any additional compensation and was paid a wage of only $18 per hour for all of the work he performed.

**41.** Upon information and belief, similarly situated non-black employees of LAW PLUS were not required to perform comparable duties across both dealerships, and/or were compensated at a higher rate than Mr. Williams-Hayes for performing the same or substantially similar work.

**42.** The identities, job assignments, and precise compensation of these employees are within Defendants' exclusive possession, custody, and control, including in Defendants' payroll, scheduling, and personnel records, and will be established through discovery.

**43.** Upon information and belief, in or around May 2026, Mr. Williams-Hayes and LAW PLUS' other Black Detailers, including Mr. Robinson and Randal Asbury, were assigned the heavier and less desirable work, while a white employee, William "Bull" Connolley, who performed maintenance work, was permitted to direct and obstruct their work and was treated more favorably by management.

**44.** Upon information and belief, on or about June 10, 2026, Mr. Williams-Hayes and Mr. Robinson, the Black Detailers on the Volkswagen of Springfield side, were required to work with malfunctioning equipment, including a pressure washer that repeatedly lost pressure and a vacuum that was not hooked up, while two white Detailers on the Springfield Mitsubishi side had a working pressure washer and a wall-mounted vacuum.

**B. <u>The Racial Slur</u>**

**45.** On or about April 15, 2026, at or around 3 P.M., outside LAW PLUS' detail shop, Plaintiff was informed by his co-worker, Mr. Donte Robinson, that "someone in HR called [Plaintiff] a monkey."

**46.** Plaintiff was informed that the individual who made the statement was a manager known to him only as "Marisa," upon information and belief Marisa Corrado, LAW PLUS' Controller, whose office is in LAW PLUS' Human Resources building, and that she made the statement to Tim Martin, a former Lot and Detail Manager of LAW PLUS who was visiting the dealership, stating, in substance: "I see Chris got that monkey working for him."

**47.** Upon information and belief, as Controller, Ms. Corrado exercised authority over employee pay, scheduling, and discipline at LAW PLUS' dealerships, and the "Chris" to whom she referred was Defendant PHILLIPS, the General Manager to whom Mr. Williams-Hayes reported.

**48.** The word "monkey," directed at a black person, is a notorious and dehumanizing racial slur.

**49.** Although Mr. Williams-Hayes had never spoken with Marisa, the statement was made about him specifically.

**50.** Upon information and belief, Marisa knew who Mr. Williams-Hayes was; the dealership premises are monitored by cameras, and the mother of one of the co-workers alongside whom Mr. Williams-Hayes detailed vehicles works in the same building as Marisa.

### C. <u>Defendants' Response to the Racial Slur</u>

**51.** Mr. Robinson reported the racial slur in person to PHILLIPS on or about the morning after he learned of it, before he told Mr. Williams-Hayes. Mr. Williams-Hayes then also engaged in protected conduct by verbally reporting the racial slur to PHILLIPS, the General Manager for Volkswagen of Springfield, who has supervisory authority over employees.

**52.** PHILLIPS' reaction to Mr. Williams-Hayes' complaint conveyed that he had not wanted Mr. Williams-Hayes to learn of the slur.

**53.** PHILLIPS told Mr. Williams-Hayes that LAW PLUS was "investigating" the situation.

**54.** On or about April 17, 2026, at or around 2 P.M., after Plaintiff already knew about the incident, he was instructed by PHILLIPS to go into the HR building to obtain a check for a customer and deliver it to the customer.

**55.** By text message, PHILLIPS instructed Plaintiff: "You can go inside and see the dark haired woman that sits in the corner office. She has the check."

**56.** Plaintiff felt very uncomfortable entering the HR building and interacting with HR personnel given that he had been informed he was being viewed and referred to as a "monkey," and he still did not

know the identity or appearance of the person who made the statement. Prior to April 17, 2026, Plaintiff had never been inside the HR building.

**57.** No one from LAW PLUS interviewed Mr. Williams-Hayes about the racial slur or his complaint.

**58.** Upon information and belief, LAW PLUS conducted no genuine investigation.

**59.** On or about April 20, 2026, PHILLIPS approached Mr. Williams-Hayes in person and told him, in substance, “I think you and Marisa should have a conversation.” That was the only outcome of LAW PLUS’ purported investigation ever communicated to Mr. Williams-Hayes.

**60.** Plaintiff objected to being asked to speak with Marisa and communicated to PHILLIPS, in person and by text message, that he did not feel comfortable speaking with her after the racially derogatory statement and due to LAW PLUS’ handling of the situation.

**61.** On or about April 20, 2026, Mr. Williams-Hayes sent a text message to PHILLIPS stating that he was not going to have a conversation with Marisa because he did not feel comfortable speaking with her and did not like how LAW PLUS handled the situation, stating in substance: “I’m not having a conversation until I ask my lawyer these questions. This is crazy y’all want us to have a conversation after she racially profiled me.”

**62.** Plaintiff further stated to PHILLIPS that, in his view, if the situation were reversed, he would have been fired.

**63.** PHILLIPS responded, in substance: “I understand that but it’s her job and it’s your right as an employee.”

**64.** On or about April 21, 2026, Plaintiff sent another text message to PHILLIPS reiterating that he would not have a conversation with Marisa because he had never spoken to her before.

**65.** On or about April 20 and 21, 2026, Plaintiff also engaged in protected conduct by advising PHILLIPS in writing that he had contacted lawyers at the Cochran Firm to seek legal advice on race-based harassment and discrimination.

**66.** Mr. Williams-Hayes alleges that LAW PLUS subjected him to race-based harassment and a hostile work environment by permitting and/or failing to promptly and effectively remedy a racially derogatory slur ("MONKEY") attributed to an HR employee (Marisa), and by thereafter seeking to have Plaintiff meet with the alleged harasser rather than ensuring a workplace free from racial harassment.

**67.** Mr. Williams-Hayes further alleges that LAW PLUS' actions after he objected to the racial harassment constitute unlawful retaliation and/or contributed to the hostile work environment, including asking him to speak with the alleged harasser after he opposed the conduct, conducting no genuine investigation, and taking no corrective action.

**68.** Despite Plaintiff's complaint to management, no genuine investigation was conducted and, upon information and belief, no disciplinary action was taken against Marisa.

**69.** LAW PLUS and PHILLIPS' actions in this regard were clearly discriminatory as, upon information and belief, similarly situated non-black employees did not have their legitimate complaints of workplace discrimination ignored or undermined in this manner.

**70.** LAW PLUS and PHILLIPS' actions in this regard had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace, thereby negatively impacting his ability to perform his job and severely, negatively altering his work environment and the terms and conditions of his employment at LAW PLUS.

**71.** LAW PLUS failed to prevent and remediate the racial harassment and discrimination despite having knowledge of these issues through Plaintiff's complaints and complaints by other employees.

**72.** LAW PLUS' employee handbook (the Law Automotive Employee Handbook, amended September 27, 2024) explicitly prohibits racial discrimination and harassment, including "slurs" and "disparaging or abusive words or phrases" relating to race, and retaliation; states that LAW PLUS "will conduct a prompt and thorough investigation of all allegations of discrimination, harassment, or retaliation" and "will take appropriate corrective action"; and directs employees who witness or are subjected to discrimination or harassment to "immediately notify Marisa Corrado, Controller, … or any member of management."

**73.** The handbook thus designated as LAW PLUS' primary recipient of discrimination and harassment complaints the very manager who, upon information and belief, made the racial slur about Mr. Williams-Hayes.

**74.** Despite these written policies, the employer failed to follow its own procedures and took no action to investigate, discipline, or remove the harassers.

**D. <u>Retaliation After Plaintiff Retained Counsel</u>**

**75.** On or about May 27, 2026, Plaintiff's counsel sent LAW PLUS a written demand letter, enclosing a draft charge of discrimination, placing LAW PLUS on notice of Plaintiff's claims of race and color discrimination, hostile work environment, and retaliation. The letter was addressed by email to Ms. Corrado herself, as LAW PLUS' Controller, with a copy to Michele Carroll, LAW PLUS' Head of Human Resources.

**76.** On or about June 4, 2026, one week later, Mr. Williams-Hayes was instructed by PHILLIPS to report to the office at 2:38 PM, shortly after the start of his 2:00 PM shift.

**77.** Upon arriving at the Volkswagen building from the detail area, where he had been working on detail tasks, Plaintiff found PHILLIPS and Sales Manager Christopher Maranan ("Mr. Maranan") at the front desk.

**78.** PHILLIPS directed Mr. Maranan to escort Plaintiff into an office for a conversation regarding his timecard.

**79.** During this meeting, Plaintiff was questioned about alleged discrepancies on his timecard as if he were attempting to steal time from LAW PLUS.

**80.** Following their discussion, Plaintiff was instructed to clock out and leave immediately, which he did.

**81.** On or about June 8, 2026, after missing three (3) days of work due to the events described above, Plaintiff sent a text message to PHILLIPS asking whether he had been fired or suspended.

**82.** The following day, June 9, 2026, at 8:58 AM, PHILLIPS responded by text message, in substance: "Good morning. I have been told that you can return to work starting today and resume your normal schedule. Your next paycheck will have a debit of 25 minutes from Tuesday to reflect the accurate departure of 8:05 versus the 8:30 punch."

**83.** Before June 2026, Plaintiff had never had his pay deducted or adjusted for any timekeeping issue.

**84.** Upon information and belief, other LAW PLUS employees who forgot to clock out were not docked pay.

**85.** On or about June 9, 2026, the same day, Plaintiff, through counsel, filed EEOC Charge No. 530-2026-07199, and LAW PLUS was thereafter notified of the charge.

**86.** On or about June 29, 2026, the EEOC issued Plaintiff's Notice of Right to Sue.

**87.** On or about July 20, 2026, LAW PLUS terminated Mr. Williams-Hayes' employment, stating that the termination was for "calling out."

**88.** Upon information and belief, the stated reason for Plaintiff's termination was false and pretextual.

**89.** LAW PLUS had never disciplined Plaintiff for attendance, and, upon information and belief, similarly situated employees who called out of work and who had not engaged in protected activity were not terminated.

**90.** Upon information and belief, LAW PLUS' termination of Mr. Williams-Hayes followed the same course as its treatment of Mr. Robinson, the co-worker who had reported the racial slur about Mr. Williams-Hayes to PHILLIPS: on or about June 23, 2026, two weeks after Mr. Robinson filed his own charge of discrimination with the EEOC (Charge No. 530-2026-07198), LAW PLUS terminated Mr. Robinson's employment by letter, citing attendance. Mr. Robinson's claims are the subject of Robinson v. Law Plus LLC, et al., Civil Action No. 2:26-cv-07440, filed in this Court on September 28, 2026.

**91.** The close temporal proximity between Plaintiff's protected activity, including his April 2026 complaints to PHILLIPS, his notice to PHILLIPS that he had retained counsel, counsel's May 27, 2026 demand letter, and his June 9, 2026 EEOC charge, and the adverse actions described herein, including the June 4, 2026 timecard confrontation and three-day removal from the schedule, the pay deduction, and the termination of his employment on or about July 20, 2026, three weeks after the EEOC issued his Notice of Right to Sue, supports a strong inference of retaliatory causation.

### E. <u>The Effect of Defendants' Conduct on Plaintiff</u>

**92.** The harassment caused Mr. Williams-Hayes severe emotional distress, anxiety, humiliation, and fear.

**93.** The harassment interfered with Plaintiff's ability to perform job duties and, despite the need for income, caused Mr. Williams-Hayes to consider whether he could continue being subjected to such discriminatory and retaliatory behavior, and it appeared that Defendants were attempting to constructively discharge him.

**94.** Plaintiff continued to work for the employer due to financial necessity, notwithstanding that the ongoing harassment and failure to act had made the work environment intolerable, until LAW PLUS terminated his employment on or about July 20, 2026.

**95.** As a result of the termination, Plaintiff has lost his income and has been unable to meet his living expenses.

**96.** The totality of Defendants' actions demonstrates a pattern and practice of failing to prevent, investigate, or remedy discrimination and retaliation, including the failure to effectively implement and enforce anti-discrimination and anti-retaliation policies and to adequately train management and staff regarding employees' civil rights obligations. These failures, carried out and condoned by LAW PLUS management and executive leadership, resulted in the selective stripping of job duties, unequal treatment, retaliatory actions, the creation of an intimidating, humiliating, and hostile work environment directed at Plaintiff, and ultimately the termination of his employment, in violation of federal, Pennsylvania State, employment and civil rights laws.

**97.** Upon information and belief, LAW PLUS engaged in a pattern and practice of disparate treatment, providing preferential treatment, opportunities, and benefits to employees outside Plaintiff's protected classes, while denying equal treatment, opportunities, and benefits to Plaintiff and other similarly situated black, and African American employees. This disparate treatment was carried out knowingly and intentionally and affected the terms, conditions, and privileges of Plaintiff's employment.

**98.** Defendant discriminated against Plaintiff on the basis of his skin color and race, and protected complaints about Defendant's supervisory staff's wrongdoing. Defendants retaliated against Plaintiff for engaging in protected activity related to his skin color and race and protected complaints about workplace discrimination.

**99.** To further the unlawful, hostile, and intimidating work environment and the disparate treatment of Plaintiff, PHILLIPS engaged in wrongful acts to buttress and further LAW PLUS' disparate treatment of Plaintiff, to interfere with Plaintiff's employment agreement with LAW PLUS, and/or to tortiously force Plaintiff out of Plaintiff's employment agreement with LAW PLUS.

**100.** The effect of the practices complained of hereinabove has been to deprive black, African American employees and applicants for employment of equal employment opportunities and otherwise adversely affect their status as employees and applicants for employment because of their skin color and race.

**101.** As a result of LAW PLUS' unlawful and discriminatory actions, Plaintiff has endured, and continues to endure, unlawful humiliation resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments.

**102.** As a result of LAW PLUS' unlawful and discriminatory actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

**103.** As a result of LAW PLUS' unlawful and discriminatory actions, Plaintiff has endured, and continues to endure, financial hardships and irreparable damage to his professional reputation.

**104.** As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income and benefits which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

**105.** Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

**106.** Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Discrimination in Violation of Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. § 2000e-2(a)**
**(Against the Corporate Defendant)**

**107.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

**108.** Defendant LAW PLUS is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), employing fifteen (15) or more employees.

**109.** Defendant LAW PLUS discriminated against Plaintiff in the terms and conditions of his employment, including by terminating his employment on or about July 20, 2026, on the basis of his race and color as a black, African American man, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

**110.** As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensable harm.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. § 2000e-2(a)**
**(Against the Corporate Defendant)**

**111.** Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

**112.** Defendant LAW PLUS subjected Plaintiff to a hostile work environment based on his race and color as a black, African American man, sufficiently severe or pervasive to alter the conditions of

Plaintiff's employment and create an abusive working environment, in violation of 42 U.S.C. § 2000e-2(a).

**113.** The hostile work environment included, without limitation: an HR employee referring to Plaintiff as a "MONKEY"; Defendants' failure to meaningfully investigate or remediate the racial slur; and Defendants' request that Plaintiff meet with his alleged harasser after he reported the racial harassment.

**114.** Defendant LAW PLUS knew of the hostile work environment through Plaintiff's complaints to management and failed to take prompt and effective remedial action.

**115.** As a direct and proximate result, Plaintiff has suffered and continues to suffer damages as set forth herein.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)**
**(Against the Corporate Defendant)**

**116.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

**117.** Plaintiff engaged in protected activity by reporting and opposing the racial slur and Defendants' handling of it, by advising PHILLIPS that he had retained counsel regarding race-based harassment and discrimination, by causing his counsel to send LAW PLUS a demand letter on or about May 27, 2026, and by filing a charge of discrimination with the EEOC on or about June 9, 2026.

**118.** Defendant LAW PLUS retaliated against Plaintiff for his protected activity, including by: asking Plaintiff to meet with his alleged harasser; ignoring and undermining Plaintiff's complaints; perpetuating the hostile work environment; confronting Plaintiff over his timecard, removing him

from the schedule for three days, and deducting his pay in June 2026; and terminating his employment on or about July 20, 2026, in violation of 42 U.S.C. § 2000e-3(a).

**119.** Defendants' retaliatory conduct would dissuade a reasonable employee from making or supporting a charge of discrimination.

**120.** As a direct and proximate result, Plaintiff has suffered and continues to suffer damages as set forth herein.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Discrimination and Hostile Work Environment in Violation of 42 U.S.C. § 1981**
**(Against All Defendants)**

**121.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

**122.** 42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of contracts, including employment contracts.

**123.** Defendants intentionally discriminated against Plaintiff on the basis of his race in the terms, conditions, privileges, and termination of his employment contract, and subjected him to a racially hostile work environment, in violation of 42 U.S.C. § 1981.

**124.** Defendant CHRIS PHILLIPS is individually and personally liable under 42 U.S.C. § 1981 based on his direct and active participation in the racially discriminatory and retaliatory conduct alleged herein, including directing Plaintiff into the HR building after Plaintiff had learned of the slur, asking Plaintiff to meet with the alleged harasser, receiving and failing to act on Plaintiff's complaints, and directing the June 4, 2026 timecard confrontation. Individual participation in discrimination supports personal liability under Section 1981 with no requirement of exhaustion of administrative remedies.

**125.** As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer damages, including compensatory and punitive damages.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Retaliation in Violation of 42 U.S.C. § 1981**
**(Against All Defendants)**

**126.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

**127.** Defendants retaliated against Plaintiff for his opposition to race discrimination and race-based harassment, including by confronting him over his timecard, removing him from the schedule, deducting his pay, and terminating his employment on or about July 20, 2026, in violation of 42 U.S.C. § 1981.

**128.** As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including compensatory and punitive damages.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Discrimination in Violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a)**
**(Against the Corporate Defendant)**

**129.** Plaintiff repeats and realleges the allegations contained in each of the foregoing Paragraphs as if fully set forth herein.

**130.** At all times material hereto, Plaintiff was a member of a protected class on the basis of his race and color as a Black, African American man.

**131.** Defendant LAW PLUS subjected Plaintiff to discrimination in the terms, conditions, and privileges of his employment, including by terminating his employment, on the basis of his race and color, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

**132.** Defendant engaged in a pattern and practice of disparate treatment, providing preferential treatment, opportunities, and benefits to employees outside Plaintiff's protected class, while

denying equal treatment, opportunities, and benefits to Plaintiff and other similarly situated black and African American employees.

**133.** As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, anxiety, physical ailments, and other compensable harm.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**Hostile Work Environment in Violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a)**
**(Against the Corporate Defendant)**

**134.** Plaintiff repeats and realleges the allegations contained in each of the foregoing Paragraphs as if fully set forth herein.

**135.** Defendants subjected Plaintiff to a hostile, offensive, and abusive work environment based on Plaintiff's race and color as a Black, African American man.

**136.** The hostile work environment included, without limitation: an HR employee referring to Plaintiff as a "MONKEY"; Defendants' failure to meaningfully investigate or remediate the racial slur; and Defendants' request that Plaintiff meet with his alleged harasser after he reported the racial harassment.

**137.** The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment.

**138.** Defendant LAW PLUS knew or should have known of the hostile work environment and failed to take prompt and effective remedial action, in violation of 43 P.S. § 955(a).

**139.** As a direct and proximate result of the hostile work environment, Plaintiff has suffered severe emotional distress, anxiety, humiliation, fear, interference with his ability to perform his job duties, and other compensable harm.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(d)**
**(Against the Corporate Defendant)**

**140.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

**141.** Plaintiff engaged in protected activity by reporting racial harassment and discrimination to Defendant CHRIS PHILLIPS, by advising Defendants that he had sought legal counsel regarding race-based harassment and discrimination, and by filing a charge of discrimination dual-filed with the PHRC.

**142.** Following Plaintiff's protected activity, Defendants retaliated against Plaintiff, including by: asking Plaintiff to meet with his alleged harasser; ignoring and undermining Plaintiff's complaints; perpetuating and exacerbating the hostile work environment; confronting him over his timecard, removing him from the schedule, and deducting his pay; and terminating his employment, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(d).

**143.** Defendants' retaliatory conduct would dissuade a reasonable employee from making or supporting a charge of discrimination.

**144.** As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and continues to suffer damages as set forth herein.

**AS AND FOR A NINTH CAUSE OF ACTION**
**Aiding and Abetting in Violation of the Pennsylvania Human Relations Act,**
**43 P.S. § 955(e)**
**(Against Defendant PHILLIPS)**

**145.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

**146.** Defendant CHRIS PHILLIPS, as a supervisor and agent of LAW PLUS, aided, abetted, incited, compelled, and coerced the discriminatory and retaliatory conduct described herein. Specifically,

Defendant CHRIS PHILLIPS actively participated in discriminatory conduct, failed to take remedial action after Plaintiff reported racial harassment, asked Plaintiff to meet with his harasser, directed the June 4, 2026 timecard confrontation, and aided and abetted the hostile work environment and retaliation against Plaintiff, including his termination, in violation of 43 P.S. § 955(e).

**147.** As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages as set forth herein.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact, damages, and all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, THE ABOVE BEING CONSIDERED, Plaintiff RONDELL LAMONT WILLIAMS-HAYES respectfully requests that this Court enter judgment against Defendants, jointly and severally, and award Plaintiff the following relief:

a) A declaratory judgment that Defendants' conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act;

b) An injunction directing Defendants to cease and desist from all discriminatory, harassing, and retaliatory practices against Plaintiff and other similarly situated employees;

c) Reinstatement of Plaintiff to his former position with full back pay and benefits or, in lieu of reinstatement, an award of front pay;

d) Compensatory damages for Plaintiff's lost wages, lost benefits, and lost employment opportunities in an amount to be determined at trial;

e) Compensatory damages for Plaintiff's pain and suffering, emotional distress, humiliation, anxiety, and loss of enjoyment of life;

f) Punitive damages based on Defendants' willful, malicious, and reckless disregard of Plaintiff's federally and state-protected civil rights;

g) Attorneys' fees and costs pursuant to 43 P.S. § 962, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 1988;

h) Pre- and post-judgment interest on all monetary awards; and

i) Such other and further relief as this Court deems just, equitable, and proper.

Dated: New York, New York
September 28, 2026

Respectfully submitted,

THE COCHRAN FIRM

/s/TRACEY L. BROWN
TRACEY L. BROWN, ESQ.
Counsel for Plaintiff
17 State Street, 14th Floor
New York, New York 10004
(Tel No.) (212) 553-9165
(Facsimile) (212) 227-8763
tbrown@cochranfirmny.com